AO 106 (Rev. 04/10) Application for a Search Warrant

# UNITED STATES DISTRICT COURT
for the
Southern District of California

FILED
OCT 19 2018
CLERK US DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY _____ DEPUTY

In the Matter of the Search of )
*(Briefly describe the property to be searched* )
*or identify the person by name and address)* )   Case No.
Apple iPhone, Model A1660, FCC ID: BCG-E3085A, )
IC: 579C-E3085A, IMEI: 355827087278013 )
) **18MJ5429**

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A-1.

located in the **Southern** District of **California**, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B-1.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

☐ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 8 U.S.C. § 1324 | Illegal Transportation of Aliens |

The application is based on these facts:

See attached Affidavit.

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

Francisco Hurtado, U.S. Border Patrol Agent
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 10/19/18

*Judge's signature*

City and state: San Diego California      Hon. William V. Gallo, United States Magistrate Judge
*Printed name and title*

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF<br><br>(1) One Apple iPhone, Model A1660, FCC ID: BCG-E3085A, IC: 579C-E3085A, IMEI: 355827087278013; and<br><br>(2) One Apple iPhone, Model A1660, FCC ID: BCG-E3085A, IC: 579C-E3085A, IMEI: 355827087207913. | **AFFIDAVIT OF U.S. BORDER PATROL AGENT FRANCISCO HURTADO IN SUPPORT OF SEARCH WARRANT** |

I, Agent Francisco Hurtado, having been duly sworn, declare and state as follows:

## I
## INTRODUCTION

1. I make this affidavit in support of an application for a warrant to search:

   a) One Apple iPhone, Model A1660, FCC ID: BCG-E3085A, IC: 579C-E3085A, IMEI: 355827087278013 (Target Device 1), and

   b) One Apple iPhone, Model A1660, FCC ID: BCG-E3085A, IC: 579C-E3085A, IMEI: 355827087207913 (Target Device 2)

(collectively, the **Target Devices**), and seize evidence of crimes, specifically violations of Title 8, United States Code, Section 1324, Alien Smuggling (the Target Offense).

2. The **Target Devices** were seized from Defendants Imad Kero and Najib Diban Kero at the time of their arrest for Alien Smuggling on August 6, 2018, near Chula Vista,

1  California. The **Target Devices** are currently in the possession of the Department of
2  Homeland Security as evidence in the evidence vault located at 311 Athey Avenue, San
3  Ysidro, California 92173.

4      3.    This search of the **Target Devices** supports an investigation and prosecution
5  of the Defendants for the Target Offense. Based on the information below, there is probable
6  cause to believe that a search of the **Target Devices**, as described in Attachments A-1 and
7  A-2, will produce evidence of the Target Offenses, as described in Attachments B-1 and
8  B-2.

9      4.    The following is based upon my experience and training, investigation, and
10 consultation with other law enforcement agents and officers experienced in alien
11 violations, including the Target Offenses. The evidence and information contained herein
12 was developed from interviews and my review of documents and evidence related to this
13 case. Because I make this affidavit for the limited purpose of obtaining a search warrant
14 for the Target Devices, it does not contain all of the information known by me or other
15 federal agents regarding this investigation, but only sets forth those facts believed to be
16 necessary to establish probable cause. Dates and times are approximate, and refer to Pacific
17 Standard Time (PST) unless otherwise specified.

## II

### AFFIANT'S EXPERIENCE AND TRAINING

20     5.    I am a law enforcement officer of the United States within the meaning of
21 Title 18, United States Code, Section 2510(7), who is empowered by law to conduct
22 investigations of, and to make arrests for, offenses enumerated in Title 18, United States
23 Code, Section 2516. I am also a federal law enforcement officer within the meaning of
24 Rule 41(a)(2)(C) of the Federal rules of Criminal Procedure. I am authorized under Rule
25 41(a) to make applications for search and seizure warrants and to serve arrest warrants. I
26 am authorized to investigate violations of laws of the United States and to execute warrants
27 issued under the authority of the United States.

28

6. I am a U.S. Border Patrol Agent (BPA) with the Department of Homeland Security, Customs and Border Protection, United States Border Patrol (USBP). I have been employed as a full-time, sworn federal agent with the USBP since May of 2003, and graduated from the USBP Training Academy located in Artesia, New Mexico. The 20-week Academy curriculum covers specialized training in the Immigration and Naturalization Act, criminal law, and statutory authority, as well as cross-training in Title 21, United States Code, Controlled Substances law, and in Title 19, United States Code, Customs law.

7. I am currently assigned to Chula Vista Border Patrol Station's Intelligence Division, which is responsible for developing, analyzing, and disseminating operational, tactical, and strategic intelligence through the use of various investigative techniques, criminal informants, and questioning of defendants and material witnesses. This is done in an effort to develop actionable intelligence relating to the smuggling of undocumented aliens, principals involved in alien smuggling, alien smuggling organizations and to better understand the modus operandi of alien smugglers and alien smuggling organizations. I have extensive experience in narcotics investigations, to include drug interdiction and seizure, I have assisted in serving arrest warrants for criminal aliens, I saved an 11 year old girl's life during an accident, I single-handedly arrested two wanted suspects for the Chula Vista Police Department while performing uniformed duties.

8. Through the course of my training, investigations, and conversations with other law enforcement personnel, I am aware that it is a common practice for alien smugglers to work in concert with other individuals and to do so by utilizing cellular telephones and portable radios to maintain communications with co-conspirators in order to further their criminal activities. I am also aware that it is a common practice for alien smugglers to communicate with the smuggled aliens regarding smuggling arrangements and payment utilizing cellular telephones and portable radios. Conspiracies involving alien smuggling generate many types of evidence including, but not limited to, cellular phone-related evidence such as voicemail and text messages referring to the arrangements of

travel and payment, names, photographs, text messages, and phone numbers of co-conspirators and aliens to be smuggled.

9. In preparing this affidavit, I have conferred with other agents and law enforcement personnel who are experienced in the area of alien smuggling investigations, and the opinions stated below are shared by them. Further, I have personal knowledge of the following facts, or have had them related to me by persons mentioned in this affidavit.

10. Based upon my training and experience as a USBP Agent, and consultations with other law enforcement officers experienced in alien smuggling investigations, and all the facts and opinions set forth in this affidavit, I submit the following:

    a. Alien smugglers will use cellular telephones because they are mobile and they have instant access to telephone calls, text, web, and voice messages.

    b. Alien smugglers will use cellular telephones because they are able to actively monitor the progress of the illegal aliens while they are in transit.

    c. Alien smugglers and their accomplices will use cellular telephones because they can easily arrange and/or determine what time the smuggled aliens will arrive at predetermined locations.

    d. Alien smugglers will use cellular telephones to direct drivers to synchronize a drop off and/or pick up time of the smuggled aliens.

    e. Alien smugglers will use cellular telephones to notify or warn their accomplices of law enforcement activity including the presence and location of marked and unmarked units, as well as the operational status of USBP checkpoints.

    f. Alien smugglers will use cellular telephones to make arrangements with the smuggled aliens prior to the smuggling event, and to arrange for payment after the smuggling event.

    g. The use of cellular telephones by alien smugglers tends to generate evidence that is stored on the cellular telephones, including, but not limited to, emails, text messages, photographs, audio files, call logs, address book entries, IP addresses, social network data, and location data.

4

11. Subscriber Identity Module (SIM) Cards, also known as subscriber identity modules, are smart cards that store data for cellular telephone subscribers. Such data includes user identity, location and phone number, network authorization data, personal security keys, contact lists and stored text messages. Much of the evidence generated by a smuggler's use of a cellular telephone would likely be stored on any SIM Card that has been utilized in connection with that telephone.

12. Based upon my training and experience, and consultations with law enforcement officers experienced in alien smuggling investigations, and all the facts and opinions set forth in this affidavit, I have learned that cellular/mobile telephones often contain electronic records, phone logs and contacts, voice and text communications, and data such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data. This information can be stored within disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular/mobile telephone. Specifically, based upon my training and education, searches of cellular/mobile telephones associated with alien smuggling investigations may yield evidence:

    a. tending to indicate efforts to transport undocumented aliens;

    b. tending to identify other facilities, storage devices, or services–such as email addresses, IP addresses, phone numbers–that may contain electronic evidence tending to indicate efforts to transport undocumented aliens;

    c. tending to identify co-conspirators, criminal associates, or others involved in transporting undocumented aliens;

    d. tending to identify travel to or presence at locations involved in the transportation of undocumented aliens, such as stash houses, load houses, or delivery points;

    e. tending to identify the user of, or persons with control over or access to, the **Target Devices**; and/or

5

   f. tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above..

## III

## STATEMENT OF PROBABLE CAUSE

13. On August 6, 2018, at approximately 5:10 p.m., a U.S. Border Patrol Agent observed a silver Buick van driving slowly eastbound on Keublers Ranch Road toward the parking lot of the Alta Cafe, which has been closed for business for several years and is currently abandoned. As soon as the vehicle stopped, the agent observed four individuals come out from a door on the south side of the Alta Café building, and they ran towards the parked silver Buick van. The four individuals were wearing dark clothing, had backpacks, and visibly had dirt and brush all over their clothing. The agent observed the individuals getting into the backseat of the silver Buick van. The agent notified agents in the area of his observations. Another U.S. Border Patrol agent responded after receiving a vehicle description and direction of travel. The agent observed the silver minivan driving south on Alta Road and approaching the intersection of Alta Road and Paseo De La Fuente.

14. Based on the other agents' observations, a third U.S. Border Patrol Agent stopped the minivan on State Route 11. The third agent approached the passenger side of the minivan and observed a male driver, later identified as the defendant Imad KERO (IMAD), and a male passenger, later identified as the defendant Najib Diban KERO (NAJIB). As he got closer to the minivan, the agent observed four subjects attempting to conceal themselves in the back seat. The agent identified himself as a United States Border Patrol Agent and conducted an immigration inspection. The four individuals in the backseat, later identified as material witnesses Felipe BAZANTE-Santos, Felipe CONCHA-Hernandez, Jose Alfredo DIAZ-Leal, and Rafael GUADARRAMA-De La Luz, stated they are citizens of Mexico without any immigration documents which would allow them to enter or remain in the United States legally. At approximately 5:14 p.m., the agent placed BAZANTE, CONCHA, DIAZ, and GUADARRAMA under arrest. At

1 approximately 5:15 p.m., the driver, IMAD, was placed under arrest followed by NAJIB
2 at approximately 5:16 p.m.

3      15.   During his post-arrest statement following *Miranda* warnings, IMAD stated
4 he was in the area purchasing a car for his son, NAJIB, at the auctions when they became
5 lost and stopped at Alta Cafe to get a coffee. At this time, he stated that four individuals
6 asked him for a ride. IMAD stated he did not know that the four individuals were illegal
7 aliens. When questioned further, IMAD grabbed his chest and complained of chest pain
8 and numbness in his left hand. Agents immediately provided medical attention, including
9 transporting IMAD to the hospital. On August 7, 2018 at approximately 1:00 a.m., IMAD
10 returned from the hospital. At 1:16 a.m., IMAD was advised that his *Miranda* rights still
11 applied. IMAD stated that he was in the area to smuggle illegal aliens with his son. IMAD
12 stated that the illegal aliens had the description of the car before they got into his vehicle.
13 According to IMAD, he was not sure how much money he would receive for picking up
14 the illegal aliens, but he asked for around $300.

15     16.   During his post-arrest statement following *Miranda* warnings, NAJIB stated
16 that he made arrangements to pick up four illegal aliens at 2:00 p.m. at the Alta Cafe.
17 NAJIB knew the Alta Cafe was abandoned and the illegal aliens were hiding inside. NAJIB
18 stated he was going to be paid $900 per person by a man named "Eduardo."

19     17.   All four material witnesses were interviewed at the station. All stated they are
20 citizens of Mexico illegally present in the United States. They stated that they did not have
21 any immigration documents which would allow them to enter or remain in the United
22 States legally. The material witnesses stated they were going to pay between $6,000 to
23 $7,000 USD to be smuggled into the United States. When presented with a photographic
24 lineup, all four material witnesses positively identified IMAD as the driver. Material
25 witness DIAZ positively identified NAJIB as the passenger.
26 //
27 //
28 //

18. The U.S. Border Patrol Agents collected the **Target Devices** from Defendants at the time of their arrest.[1]

19. Based on my experience investigating alien smugglers, Defendants may have used the **Target Devices** to coordinate with their co-conspirators regarding the alien smuggling event, and to otherwise further this conspiracy both inside and outside the United States. I believe that recent calls made and received, telephone numbers, contact names, electronic mail (email) addresses, appointment dates, text messages, email messages, messages and posts from social networking sites, pictures, and other digital information may be stored in the memory of a cellular telephone and may identify other persons involved in alien smuggling activities.

20. Based on my experience and training, consultation with other law enforcement officers experienced in alien trafficking investigations, and all the facts and opinions set forth in this affidavit, I believe that information relevant to the alien smuggling activities of Defendants and their co-conspirators, such as recent calls made and received, telephone numbers, contact names, electronic mail (email) addresses, appointment dates, text messages, email messages, messages and posts from social networking sites, pictures, and other digital information may be stored in the memory of the **Target Devices**.

21. Alien smuggling requires intricate planning and coordination to successfully evade detection by law enforcement. In my professional training, education and experience, I have learned that this requires planning and coordination in the days, weeks, and often months prior to the event. Given this, I request permission to search the **Target Devices** for items listed in Attachments B-1 and B-2 beginning on May 6, 2018, up to and including August 6, 2018.

//

//

---

[1] Following the Defendants' arrests on August 6, 2018, agents reviewed portions of the Target Devices with Defendants during their post-arrest interviews. In an abundance of caution, I ask the court not to consider information agents may or may not have seen during that examination in determining whether there is probable cause for the requested warrant.

8

## III

## METHODOLOGY

22. It is not possible to determine, merely by knowing the cellular telephone's make, model and serial number, the nature and types of services to which the device is subscribed and the nature of the data stored on the device. Cellular devices today can be simple cellular telephones and text message devices, can include cameras, can serve as personal digital assistants and have functions such as calendars and full address books and can be mini-computers allowing for electronic mail services, web services and rudimentary word processing. An increasing number of cellular service providers now allow for their subscribers to access their device over the internet and remotely destroy all of the data contained on the device. For that reason, the device may only be powered in a secure environment or, if possible, started in "flight mode," which disables access to the network. Unlike typical computers, many cellular telephones do not have hard drives or hard drive equivalents and store information in volatile memory within the device or in memory cards inserted into the device. Current technology provides some solutions for acquiring some of the data stored in some cellular telephone models using forensic hardware and software. Even if some of the stored information on the device may be acquired forensically, not all of the data subject to seizure may be so acquired. For devices that are not subject to forensic data acquisition or that have potentially relevant data stored that is not subject to such acquisition, the examiner must inspect the device manually and record the process and the results using digital photography. This process is time and labor intensive and may take weeks or longer.

23. Following the issuance of this warrant, I will collect the **Target Devices** and subject them to analysis. All forensic analysis of the data contained within the **Target Devices** and the memory card(s) will employ search protocols directed exclusively to the identification and extraction of data within the scope of this warrant.

24. Based on the foregoing, identifying and extracting data subject to seizure pursuant to this warrant may require a range of data analysis techniques, including manual

9

review, and, consequently, may take weeks or months. The personnel conducting the identification and extraction of data will complete the analysis within ninety (90) days of the date the warrant is signed, absent further application to this court.

## IV
## CONCLUSION

25. Based on all of the facts and circumstances described above, there is probable cause to conclude that Defendants used the **Target Devices** to facilitate violations of Title 8, United States Code, Section(s) 1324 (a)(1)(A)(ii) and (a)(1)(B)(i).

26. Because the **Target Devices** were promptly seized during the investigation of Defendants' smuggling activities and have been securely stored, there is probable cause to believe that evidence of illegal activities committed by Defendant continues to exist on the **Target Devices**. As stated above, I believe that the date range for this search is from May 6, 2018 through August 6, 2018.

27. WHEREFORE, I request that the court issue a warrant authorizing law enforcement agents and/or other federal and state law enforcement officers to search the items described in Attachments A-1 and A-2, and the seizure of items listed in Attachments B-1 and B-2, using the methodology described above.

I declare under penalty of perjury that the foregoing is true and correct.

Francisco Hurtado
Agent

Sworn to and subscribed before me this __19__ day of October, 2018.

HONORABLE WILLIAM V. GALLO
UNITED STATES MAGISTRATE JUDGE

10

## ATTACHMENT A-1

### PROPERTY TO BE SEARCHED

The property to be searched in connection with an investigation of violation of Title 8, United States Code, Section 1324 is described as an Apple iPhone, Model A1660, FCC ID: BCG-E3085A, IC: 579C-E3085A, IMEI: 355827087278013 (Target Device 1).

Target Device 1 is currently in the possession of the Department of Homeland Security as evidence, being held in the Chula Vista Border Patrol Station, located at 311 Athey Avenue, San Ysidro, California 92173.



## **ATTACHMENT B-1**

### ITEMS TO BE SEIZED

Authorization to search Target Device 1 described in Attachment A-1 includes the search of disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in Target Device 1. The seizure and search of Target Device 1 shall follow the search methodology described in the attached affidavit submitted in support of the warrant.

The evidence to be seized from Target Device 1 will be electronic records, communications, and data such as emails, text messages, photographs, audio files, videos, and location data, for the period of May 6, 2018 through August 6, 2018:

a. tending to indicate efforts to transport undocumented aliens;

b. tending to identify other facilities, storage devices, or services–such as email addresses, IP addresses, phone numbers–that may contain electronic evidence tending to indicate efforts to transport undocumented aliens;

c. tending to identify co-conspirators, criminal associates, or others involved in transporting undocumented aliens;

d. tending to identify travel to or presence at locations involved in the transportation of undocumented aliens, such as stash houses, load houses, or delivery points;

e. tending to identify the user of, or persons with control over or access to, Target Device 1; and/or

f. tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above;

**which are evidence of violations of Title 8, United States Code Section 1324.**